# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

GILBERT DUGAS                                     CIVIL ACTION NO. 3:19-cv-00630

VERSUS                                            JUDGE TERRY A. DOUGHTY

ACE AMERICAN INSURANCE                            MAG. JUDGE WHITEHURST
COMPANY, ET AL.


## RULING

      This is a personal injury lawsuit arising from an accident at the Pilot Travel Center in Breaux Bridge, Louisiana, on October 31, 2016.  Pending before the Court is a Motion for Summary Judgment [Doc. No. 19] filed by Defendants Ace American Insurance Company ("Ace"), CRST Expedited, Inc. ("CRST"), and Mark Strauss ("Strauss").  Plaintiff Gilbert Dugas ("Dugas") opposes the motion [Doc. No. 29] and also has filed a related Motion to Strike Defendants' Exhibits  ("Motion to Strike") [Doc. No. 28].  Both motions are fully briefed.

      For the following reasons, the Motion to Strike is GRANTED IN PART AND DENIED IN PART, and the Motion for Summary Judgment is GRANTED.

## I.     MOTION TO STRIKE

      Before addressing the Motion for Summary Judgment, the Court must first consider whether the objected-to items of evidence should be stricken.  Dugas moves the Court to strike four exhibits because they are unsworn, unverified, and/or constitute hearsay: (1) the Pilot Travel Center surveillance video [Doc. No. 19-3, Exhibit A, Manual Attachment maintained in the Office of the Clerk of Court], (2) the unsworn/unverified telephone statement of Dugas [Doc. Nos. 26-13 & 26-14, Exhibits J & J-1, Declaration of Sue Hanlin and Recorded Statement of

Gilbert Dugas], (3) an RMX Accident Form [Doc. No. 25-4, p. 4], and (4) the Breaux Bridge Police Department Incident Report [Doc. No. 25-4, pp. 5-8].  Defendants oppose the motion. Dugas has filed a reply memorandum.

Under Fed. R. Civ. P. 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[1]  Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).  However, "it is not dispositive whether the [disputed materials] **in their current form** are admissible in evidence. At the summary judgment stage, materials cited to support or dispute a fact need only be capable of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir.  2016) (quoting Fed. R. Civ. P. 56(c)(2) (emphasis added).

The Court will consider each item in turn.

---

[1]To the extent that Defendants cite the Court to Federal Rule of Civil Procedure 12(f), governing motion to strike pleadings, that rule is inapplicable.   Rule 12(f) authorizes the Court to strike "from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) . Evidence submitted in support of a motion for summary judgment does not constitute a pleading, and, therefore, Rule 12(f) is inapplicable.  *See Worldwide Subsidy Grp., LLC v. Worldwide Pants Inc.,* 729 F. App'x 625, 625-26 (9th Cir. 2018) ("WSG filed a Rule 12(f) motion to strike which is inapplicable to a motion for summary judgment."); *Pilgrim v. Trs. of Tufts College*, 118 F.3d 864, 868 (1st Cir. 1997*), abrogated on other grounds by Crowley v. L.L. Bean, Inc*., 303 F.3d 387 (1st Cir. 2002); *Claridy v. The City of Lake City*, No. 3:13-CV-558-J-39PDB, 2014 WL 12656605, at *1 (M.D. Fla. Oct. 24, 2014) ("As a threshold matter, a motion to strike is not the appropriate vehicle for challenging the admissibility of evidence submitted in connection with a motion for summary judgment."); *Shah v. Chertoff*, 2007 WL 2948362 at *5 (N.D. Tex. Oct. 10, 2007) ("Rule 12(f) ... does not apply to the instant situation because evidence submitted in support of a Rule 56 motion for summary judgment is not considered a motion or pleading for purposes of Rule 12."); *Jackim v. City of Brooklyn*, No. 1:05 CV 1678, 2006 WL 8446885, at *1 (N.D. Ohio July 18, 2006). ("While some courts have employed Federal Rule of Civil Procedure 12(f) to strike non-pleading materials – e.g., affidavits, or portions thereof – there is no basis in the Federal Rules for doing so.") (citing *McLaughlin v. Copeland*, 435 F. Supp. 513 (D.C. Md. 1977)).

### 1. Pilot Surveillance Video

First, Dugas moves to exclude a video of the accident that was captured by the camera at the Pilot Travel Center.  He argues that the video has neither a certification page, nor is it accompanied by an affidavit or declaration from a Pilot employee who could certify to its authenticity.  While acknowledging that the video was produced by Pilot in response to his Request for Production No. 7, Dugas contends that this production is not sufficient to authenticate the video because Pilot lodged an objection and failed to certify,  authenticate,  or describe the video with particularity.  Finally, they contend that Sharlette Lagrange ("Lagrange'), the Manager at the Breaux Bridge Pilot Travel Center where the accident occurred, was not competent to authenticate the video in her deposition because she was not the custodian when the video is recorded and maintained at Pilot's corporate headquarters in Knoxville, Tennessee, and she did not view the video as the incident occurred.  [Doc. No. 19-5, Deposition of Sharlette Lagrange ("Lagrange Depo."), pp. 47-50].

Defendants respond that the surveillance video and the uncontroverted expert report of Dr. Baratta are highly relevant and conclude that Dugas only had the ability to walk straight towards the 18-wheeler in the direction of the entrance to the Pilot store during the 1.7 seconds when the 18-wheeler's cab obstructed the Pilot surveillance camera's view of Dugas. They point out that Dugas was questioned at length about the events depicted on the video, and he did not dispute that the video captured him and his movements.  They also argue that the video surveillance was produced by Pilot in response to discovery and has been verified under Rule 11 of the Federal Rules of Civil Procedure by counsel of record for Pilot when counsel signed the responses.  Additionally, Lagrange, the Pilot Manager on duty at the time of the accident,  testified that the video shown during her deposition was the same video that was

3

provided to the parties by Pilot and was the same surveillance that Pilot captured at her Breaux

Bridge store on  the date of the accident.

No party disputes that a video of the accident as it occurred is clearly relevant to the

issues in this case.  The video must also be capable of being authenticated and admissible at trial.

Contrary to Dugas's arguments, however, even if the methods used by Defendants are

insufficient **at this time**, the Court may still consider the video if Defendants can present the

video in a form that would be admissible in evidence.  "To satisfy the requirement of

authenticating or identifying an item of evidence, the proponent must produce evidence

sufficient to support a finding that the item is what the proponent claims it is."  FED. R. EVID.

901.  One example of appropriate authentication is through "[t]estimony of a [w]itness with

[k]nowledge" that "an item is what it is claimed to be."  *Id.*  "Authentication is a low burden,

requiring only a showing 'sufficient to support a finding that the item is what the proponent

claims it is,'. . . and the video's 'own distinctive characteristics' might overcome it." *Allen v.*

*Hays*, No. 19-20360, 2020 WL 2182085, at *7 (5th Cir. May 5, 2020) (quoting *McLain v.*

*Newhouse (In re McLain)*, 516 F.3d 301, 308 (5th Cir. 2008) (citation omitted)).

In this case, the video was reviewed by Lagrange, the Manager at the Pilot Travel Center.

Lagrange was present on the day of the accident and spoke with the involved drivers and took

pictures of the accident scene.   Lagrange testified that she did not review the video as the

accident occurred, but she had reviewed the video once in December 2019, shortly before her

deposition, and again at her deposition on January 3, 2020.  During her deposition, she identified

the video and verified that it depicted Dugas, the vehicles involved in the accident, and the scene

of the accident at the Pilot.  [Doc. No. 19-5, Lagrange Depo., pp. 9:25-10:1-5;48:14-25-49:1;

52:14-25; 54:6-25; 56:5-24; 61:21-25].  She further testified that the video was saved to her

computer for thirty (30) days, but the system was also "connected" to the corporate office in Knoxville, Tennessee, where the video is maintained.  *Id.* at 47:21-25; 48:12-25; 49:1; 62:1-5; 65:1-7.

Additionally, as Defendants point out, the video was produced by Pilot in response to discovery requests for production.  In response to a request for "any surveillance, videotape, or video footage taken of the premise on the day of accident," Pilot produced the video that Lagrange identified.  [Doc. No. 19-4, p. 4].  Although Dugas is correct that Pilot made the standard objections to the production, Pilot also indicated that it had produced "all pertinent video [sic] herewith."  *Id.*  Those discovery responses were signed under penalty of perjury by Pilot's counsel.

Dugas himself has reviewed the video and was questioned during his deposition.  At no time did he dispute the accuracy of the video.  He challenges what happened during the 1.7 seconds he cannot be seen, but does not contest the content that is depicted.

Finally, to the extent that Dugas is challenging Lagrange's ability to authenticate the video because she is not the custodian, there is no such specific requirement under the Rule 901 applying to authentication.  Under Federal Rule of Evidence  803(6)(B), the business records exception to the hearsay rule provides for the admission of a "record [that] was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit[.]"  Generally, for admission under the business records exception, the party has to provide testimony or a declaration or affidavit from the custodian of the business records.  Dugas has not actually challenged the video on hearsay grounds, however.   Nor has he denied the accuracy of the video.  Rather, he seeks to use the Federal Rules of Civil Procedure and Evidence to avoid the Court's consideration of a video that is detrimental to his case.

The Court finds that Defendants have sufficiently presented evidence authenticating the video through the deposition testimony of Lagrange, the discovery responses of Pilot signed by their counsel, and Dugas's admissions in his own deposition.  The Court is satisfied that the video is what Defendants claim it is.  *See* FED. R. EVID. 901.  As this Court has previously recognized, "a party satisfies the authentication requirement if the document's form and content, taken with other circumstances, indicate the document is reliable." (citing FED. R. EVID. 901(b)(4)).  *Moore v. Denbury Onshore*, LLC, No. 3:14CV913, 2016 WL 843384, at *4 n.2 (W.D. La. Mar. 1, 2016).

The Court has considered Dugas's argument that Lagrange did not have personal knowledge of the procedures at the corporate office on maintaining, storing, and producing that video.  Nevertheless, there is no real challenge that the video is inaccurate or unfairly depicts the accident in question or that the video was somehow altered or changed in the chain of custody. *See generally United States v. Castillo-Chavez*, 555 F. App'x 389, 395 (5th Cir. 2014) (finding that district court did not abuse its discretion in admitting a video tape because "a proper foundation existed for admitting the gas station surveillance tape. Because Reta had knowledge about the individuals and the gas station and explained that the video was an accurate depiction of the events, his testimony authenticated the video.").  "Once the proponent has made the requisite showing, the trial court should admit the exhibit . . . in spite of any issues the opponent has raised about flaws in the authentication. Such flaws go to the weight of the evidence instead of its admissibility." *United States v. Isiwele,* 635 F.3d 196, 200 (5th Cir. 2011) (citation and internal quotation marks omitted) *cited in Castillo-Chavez*, 555 Fed. App'x at 395; *see also Moore*, 2016 WL 843384, at *4 n.2 (admission of video appropriate where opposing party "'make[s] no claim of (or offer[s] any reason to suspect) fraud or tampering, nor do[oes] [it] say

that the videos do not show actual footage of the [event] in question.") (quoting *Asociacion De Periodistas De Puerto Rico v. Mueller,* 680 F.3d 70, 79 (1st Cir. 2012)).

Finally, even if, out of an abundance of caution, authentication by someone in Pilot's corporate office is necessary at trial, that issue could easily be remedied prior to September, and the Court would grant leave to the parties to either address this issue by limited reopening of discovery or by the supplementation of the record by affidavit or declaration of the appropriate corporate representative.[2]  The Court will consider the video in ruling on the pending Motion for Summary Judgment, and Dugas's Motion to Strike the video is DENIED.

## 2.  Dugas's Telephone Statement

Dugas also moves the Court to strike the telephone statement he gave on November 21, 2016,  to Sue Hanlin ("Hanlin"),  a Casualty Claims Specialist for Cottingham & Butler Claims Services.  [Doc. Nos. 26-13 & 26-14, Exhibits J & J-1, Declaration of Sue Hanlin and Recorded Statement of Gilbert Dugas].  He argues that, "[a]t no point in the recording  . . . did Mr. Dugas ever take an oath or declare that the statement he was providing was being made under the penalty of perjury[,]" and, therefore, "[u]nder applicable law, this statement does not constitute competent summary judgment evidence and should be struck."  [Doc. No. 28-1, p. 3].

Defendants respond that the statement is not hearsay because it is not being offered to prove the truth of the matter asserted."  Instead, they contend that the statement shows that Dugas has presented "many versions of how the Incident occurred, which is in sharp contrast to both Plaintiff's deposition testimony and the events as depicted on the surveillance video in real

---

[2]Pilot is no longer a party to this case, and its corporation representative would be outside the subpoena power of the Court, so could not be made to testify at trial in this Court.  However, a witness can be subpoenaed within 100 miles of a federal courthouse, so could be made to appear in the federal district court in Knoxville, Tennessee, for a short deposition or to testify via video at trial, or the parties could agree to the submission of a declaration or affidavit of the appropriate person.   SEE FED. R. CIV. P. 45(c )(1)(A).

time." [Doc. No. 34, pp. 7-8].   Defendants further contend that the recorded statement has been properly authenticated through Hanlin's declaration and is admissible as a hearsay exception for recorded recollections under Federal Rule of Evidence 803(5).

Dugas replies that "statements which are unsworn are not competent summary judgment evidence because they do not comply with the requirements of Federal Rule of Civil Procedure 56(e)" and that Defendants' attempt to "'authenticate' . . . Dugas's statement through an affidavit by the insurance adjuster" does not "transform the unsworn statement . . . competent summary judgment evidence" merely because she "states 'I heard him say that.'" [Doc. No. 39, p. 3].

The Court will address both hearsay and admissibility of the recorded statement. Hearsay is "a statement that . . . the declarant does not make while testifying at the current trial or hearing; and . . . a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).   Dugas's statements are not hearsay for two reasons.   First, as Defendants point out, they are offering the statements, not for the truth of the matter asserted, but to prove that Dugas has offered more than one version of the events that transpired during the accident.   Second, under Federal Rule of Evidence 801(d)(2)(A), a statement is not hearsay if it is offered against a party and "was made by the party in an individual or representative capacity."   The recorded telephone statement to Hanlin was made by Dugas in his individual capacity and is now being offered against him.   Given these conclusions, the Court need not address Defendants' additional arguments under Rule 803(5).

However, Dugas argues that the recorded statement should not be considered by the Court because his statement was not under oath, was thus unsworn, and is thus inadmissible to support a summary judgment motion.   Federal Rule of Civil Procedure 56 (c) provides that a

party which asserts "that a fact cannot be or is genuinely disputed must support that assertion by . . . "citing to particular parts of the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials."

Relying on *Okoye v. University of Tex. Houston Health Science Ctr.*, 245 F.3d 507 (5th Cir. 2001),  Dugas argues that Defendants cannot meet the requirements of Rule 56 because his recorded telephone statement was unsworn.  While *Okoye* can be cited for the general proposition that unsworn witness statements may not be used to support a motion for summary judgment or opposition thereto, a closer reading of the case shows that it is inapposite.

In that case, the University of Texas Houston Health Sciences Center ("UTHHSC") and the Harris County Sheriff's Department entered into a contract in which Harris County paid UTHHSC to provide a medical director, physicians, and specialty nursing services for the detention facilities located in Harris County.  Plaintiff Ceclia Okoye ("Okoye") was formerly employed as a nurse practitioner at the Harris County facilities.  She brought suit against UTHHSC, contending that she was terminated from her position because of UTHHSC's complicity in Harris County's discrimination against her on the basis of race and national origin.  The district court granted summary judgment in favor of the employer, and the employee appealed.  In part, the employee argued that she had raised a genuine issue of material fact for trial because there were shifting reasons for her termination, suggesting that the reason given was false.  To support her position, she sought to introduce an unsworn statement that Major Quinn, the Sheriff's Department employee who blocked her entry to the facility, had stated to another employee that Okoye was blocked because she had removed a medical file.  The Fifth Circuit declined to consider the employee's statement because it was "unsworn and, therefore,  . . . not

competent summary judgment evidence because it does not comply with the requirements of Federal Rule of Civil Procedure 56(e)." *Id.* at 515 (citing *Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305–07 (5th Cir.1988).  In a footnote, the Fifth Circuit went on to state that, even if the statement were considered, it would not raise a genuine issue of material fact for trial.  *Id.* at 515 n. 10.

In *Okoye*, however, the problem was not that Major Quinn's statement was inadmissible, but that the employee who sought to testify to that statement did so in an unsworn document.  In this case, Dugas's statement is admissible as non-hearsay, and Defendants have properly offered the declaration of Hanlin as to the circumstances of the telephone recording.  Hanlin declares as follows:

1. That I am of the full age of majority and give this Declaration based upon my personal knowledge as the Casualty Claims Specialist for Cottingham & Butler Claims Services who has evaluated the alleged incident of the Plaintiff, . . . Dugas . . . occurring on October 31, 2016 at the Pilot. . . in Breaux []Bridge, Louisiana.

2. That the . . . recorded statement is a true and accurate copy of the statement that I took from the Plaintiff with his [prior] attorney present on November 21, 2016.

3. That the . . recorded statement was taken telephonically.

4. . . .

5. Dugas provided the following summary of how the incident occurred in the recorded statement:

   •The Plaintiff claimed  that the incident occurred shortly after he pulled into the Pilot Travel Center driving a Honda Accord (the "car").

   •He stopped his car in front of Pump 1.

   •Dugas alleged that he was in the process of getting out of his car and had one foot in his car and one foot on the ground when he realized that the passenger side of his car was being hit by an18-wheeler, which dragged him and his car away from Pump 1.

- Dugas said that the center part of the18-wheeler hit his car from the front fender of the passenger side down to the rear passenger side door.

- As a result of the impact, Dugas stated that his car was pushed 5 feet and that he was thrown to the ground when the 18-wheeler hit his car. Specifically, Dugas described that he fell on his left side and rolled over to his right side.

- Dugas said that when he fell down, an unidentified person at Pump 2 grabbed his hand to pull him from underneath his car.

[Doc. No. 26-13, ¶¶ 1-3, 5].

In these circumstances, the Court finds that the statements contained in the recording are properly admissible as non-hearsay and that Hanlin has properly authenticated the recording which contains those statements through a declaration based on her personal knowledge. Dugas's Motion to Strike the recorded statement is DENIED.

### 3. RMX Accident Form

Next, Dugas moves to exclude the RMX Accident Form prepared by Lagrange after the accident as unsworn and not listed as an individual exhibit.  Dugas contends that the report was inexplicably attached to the declaration of Strauss and that it contains inadmissible hearsay.

Defendants respond that the author of the report, Lagrange, verified in her deposition that she prepared the report as part of Pilot's protocol for investigating accidents on its premises.  As her deposition was under oath, Defendants contend that the report was verified by sworn testimony, that Dugas's counsel did not object to the introduction of the report at Lagrange's deposition, and that the report was also produced by Pilot in response to a Request for Production of  Documents.

Dugas replies that Lagrange's deposition  testimony  was insufficient to authenticate the accident  report.  He points out that pages  31 and 67 contain no testimony regarding  the

authenticity  of  the  report, and page 17 demonstrates only that Lagrange was presented  with the  report  and  asked if she filled it out.  Dugas contends that the report is inadmissible because Lagrange was never asked if the document bore her signature, was true and correct, or fairly and accurately depicted the report she recalled filling out.

The Court has reviewed Lagrange's testimony.  When counsel presented a copy of the report to her, Lagrange identified it as a report she filled out as the manager on duty, the steps she took to prepare the report,  that she was required to send the report to the corporate office, and that she reviewed the report prior to her deposition.  [Doc. No. 19-5, Lagrange Depo., pp. 17-18, 22-31, 67].  The Court finds that the report was properly authenticated by Lagrange, even though she was not formally asked to identify her signature.

The Court has also considered Dugas's claim that the report contains inadmissible hearsay, but he fails to identify the objected-to statements.  For the purposes of ruling on the Motion for Summary Judgment, however, the Court has considered only that Lagrange prepared the report, spoke to Dugas after the incident, and any statements by Dugas himself which are admissions by a party opponent.  Therefore, no hearsay statements will be relied upon by the Court.  Accordingly, Dugas's Motion to Strike the RMX report is also DENIED.

### 4.  Breaux Bridge Police Report

Dugas also moves to exclude the Breaux Bridge Police Report.  Defendants do not challenge the exclusion of this document.

A police report is hearsay, but may fall under the business records exception of Rule 803(6) or the public records exception of Rule 803(8).  However, as Defendants have failed to show that the police report meets either exception, it must be excluded.  Dugas's  motion is

GRANTED as to the police report, and it will not be considered by the Court in ruling on the Motion for Summary Judgment.

## II.     MOTION FOR SUMMARY JUDGMENT

### A.  FACTS, DISPUTES, AND PROCEDURAL BACKGROUND

Plaintiff Gilbert Dugas ("Dugas") alleges he was injured on October 31, 2016, when his 2012 Honda Accord ("Honda") was struck by Mark Strauss's ("Strauss") 18-wheeler at a Pilot Travel Center ("Pilot") located off of I-10 in Breaux Bridge, Louisiana.

There is surveillance video of the accident captured by closed circuit television cameras at the Pilot[3] that shows the following in sequential order:

(1) Dugas parks his car at a gas pump;

(2) Dugas gets out of his car as Strauss's 18-wheeler enters Pilot's gas station parking lot;

(3) Dugas begins to walk towards Strauss's 18-wheeler (and the entrance to the Pilot station);

(4) Dugas cannot be seen for a very short period of time;

(5) Dugas is seen again, walking in the same direction, near the driver's side window of Strauss's 18-wheeler.

[Doc. No. 19-3, Exhibit A, Pilot Travel Center Video Surveillance ("Video"), manually attached and maintained in the Office of the Clerk of Court (reviewed on June 15, 2020)].

At the time of the accident, the Pilot Manager, Lagrange, was working in her office, but was notified on her walkie-talkie by a cashier.  [Doc. No. 19-5, Lagrange Depo., p. 18:6-23]. She went outside where she observed damage to the passenger side door and passenger side mirror of Dugas's car.  *Id.* at 23:24-25; 24:3-14.  Lagrange had a brief conversation with Dugas

---

[3]There are multiple cameras on the outside and inside of the Pilot Travel Center, somewhere around 15-20 cameras total.  [Doc. No. 19-5, Lagrange Depo., pp. 62:19-25;63:1-4].

who told her that the eighteen-wheeler hit his car, but did not complain of any pain or injuries. *Id.* at 25:1; 41:1-6.  Lagrange took pictures immediately after the accident with an iPad and sent them to the corporate office in Knoxville.  *Id.* at 30:24-25; 31:1-15; 68:5-10.

After the car was struck, Dugas did not tell Strauss that he was hurt or injured in any way. However, Dugas alleges that his leg was scraped, and he was transported by ambulance to a local hospital for treatment.  [Doc. No. 26, Dugas Depo., pp. 86-87].[4]

On November 21,  2016,  less than one month after the alleged accident,  Hanlin,  a Casualty Claims Specialist for Cottingham & Butler Claims Services,  took Dugas's recorded statement by telephone with Dugas's former attorney in attendance.   Dugas stated that he stopped his car in front of Pump 1.  He was in the process of getting out of his car and had one foot in his car and one foot on the ground when he realized that the passenger side of his car was being hit by an18-wheeler, which dragged him and his car away from Pump 1.  As a result of the impact, Dugas stated that his car was pushed 5 feet and that he was thrown to the ground.  He also recounted that, after he fell down, an unidentified person at Pump 2 grabbed his hand to pull him from underneath his car.

On October 12, 2017, Dugas filed suit against Defendants Ace, CRST, Strauss, Pilot, and Progressive Security Insurance Company ("Progressive") in the Sixteenth Judicial District Court, St. Martin Parish, Louisiana.

On March 26, 2018, Dugas dismissed his claims against Progressive.

---

[4]Defendants dispute whether Dugas left by ambulance or remained on the Pilot property, but, for purposes of summary judgment, the Court assumes that Dugas did leave by ambulance, as an ambulance was on the property following the accident.  *See* [Doc. No.  29, Dugas Depo., pp. 119-127].

On May 30, 2018, in response to Defendants' Requests for Production, Pilot produced the surveillance video.  [Doc. No. 19-4; 19-4, p. 23 (showing that the documents were produced on May 30, 2018)].

On September 26, 2018, Dugas dismissed his claims against Pilot.  It also appears that he dismissed his claims against Ace, but Ace proceeds in this matter as if it were still a party.  [Doc. No. 1-1, p. 294 (September 26, 2018 Order dismissing Pilot and Ace as Defendants).  For purposes of this Ruling, the Court assumes that Ace remains a Defendant.

On November 5, 2018, Dugas was deposed and testified as follows:

> . . . I pulled up to the pump.  I opened the door.  I was—I was on the way go pay for the gas.  I looked to the right, there go a big eighteen-wheeler.  I ran back to the car, opened the door, got shoved.  And, then, that was it.

[Doc. No. 29, Dugas Depo., p. 64:20-25].  He explained further that he ran back to the car and tried to get in it, but could not.  At the time of impact, Dugas testified that he was in the door with one leg in and one leg out of his car.  *Id.* at pp. 66:6-25; 67:1;  69:13.  He then walked back to talk to the driver of the eighteen-wheeler.  *Id.* at 67:19-24.

On May 16, 2019, within thirty (30) days of the service of the original Petition on Strauss, Defendants Ace, CRST, and Strauss removed the case to this Court.

During discovery, Defendants timely retained and provided an expert report from Dr. Richard V. Baratta.  Dr. Baratta has a doctorate in biomedical engineering and is a professional accident reconstructionist.  [Doc. No. 26, Exhibit C, Declaration of Dr. Richard V. Baratta, ¶¶ 1-3; Doc. No. 26-1 Baratta Expert Report].  Dr. Baratta determined, based on the photographs of the vehicles, that the interaction between the vehicles was a sideswipe, which he explained is "characterized by primarily sliding contact and,  more importantly, occurring over an extended

time period, usually 1 second or longer." [Doc. No. 26, Baratta Dec., ¶ 1]. Further, he found

that based on the surveillance video,

> • Dugas was obscured from the camera's view by the tractor- trailer for approximately 1.75 seconds only.

> • When Dugas could not be seen, he displaced a net distance of approximately 7 feet. Therefore, Dugas's walking speed was approximately 2.7 miles per hour. This is just slightly less than the average walking speed of an adult male, which is 3.1 mph.

> • Dugas indicated in his deposition that he ran to his car to try to move it. This statement is inconsistent with the video evidence, as there was insufficient time for Dugas to get to his car.

> • There were some statements made that Dugas had fallen during the time he was obscured by the tractor-trailer rig. But there was insufficient time for him to fall, get back up, and regain a normal gait pattern and pace in less than 2 seconds.

> • If Dugas had gone back to his car during this time period, he would have traveled a total of approximately 18 feet and interacted with the Honda between running to the vehicle and then back to the position that he was in when he came back into the camera's view. He would have had to run to the Honda, attempt to move it, and interact with that during the sideswipe (which typically takes about 1 second), accelerate back, and come back to a slow walking speed within 2 seconds. This is not physically feasible.

> • The only biomechanically feasible scenario for Dugas's movement between frames, when he was obscured, was for him to walk directly from his initial standing position to the opposite side of the gas pump at a normal walking speed.

> • There was no feasible mechanism within this accident consistent with the mechanisms associated with inducing intervertebral disc prolapses.

> • Within the video, the frame rate appeared to vary within 2.6 and 2.7 frames per second. By counting the frames on the video, it appeared the video was set at 8 frames every 3 seconds.

> • Given the frame rate of 375 milliseconds per frame, Dugas could not be seen for 5 frames from when he first became obscured to becoming visible again. As such, he was only unable to be seen on the video surveillance of the accident for approximately 1.75 seconds.

> • Using Dugas's  height of 5'6," Dugas moved approximately 7 feet when he could not be seen on the surveillance video.

[Doc. No. 26, Baratta Declaration, ¶¶ 1, 3-12].  Additionally, Dr. Baratta considered three scenarios:   (1) if Dugas had continued walking, (2) if Dugas had run back to the car, or (3)if Dugas had fallen.  Dr. Baratta concluded that it was physically feasible for Dugas to have continued walking, but it was not physically feasible for Dugas to have run back to the car or to have fallen, either at the car or where he was walking.  With regard to the run back and forth from the car, he opined:

> In this scenario, Mr. Dugas would have run to the Honda from the position where he was before becoming obscured (approximately 5.5 feet away), and would have had to open the door of the Honda, put 1 foot inside it, then run back where he became visible after becoming obscured (5.5 feet + 7.2 feet).  This would have been a total distance of approximately 18 feet (5.5. feet + 5.5 feet plus another 7.2 feet). At the time he becomes visible again, he is walking, not running. Therefore, he would have had to complete the following tasks within this time period:
>
> 1. Perceive the fact that an accident between the tractor-trailer rig [and] the Honda is about to occur.
> 2. Turn around to face the Honda.
> 3. Run to the Honda.
> 4. Open the door of the Honda.
> 5. Step inside the Honda.
> 6. Interact with the Honda during the interaction between the vehicles.
> 7. Turn back around away from the Honda.
> 8. Run to a position before becoming visible.
> 9. Decelerate again from running to as low walking speed.
>
> Ignoring all of the steps that do not involve running, he would have had to get to a speed of approximately 7 mph.  Assigning perception/response times in the range of one second, it became clear that there was insufficient time, as Mr. Dugas would have to perform all of the other tasks in less than one second.  This would be physically impossible.  Accordingly, Mr.Dugas was not able to run to his car as he claims he did.

[Doc. No. 26, pp. 5-6].

On May 7, 2020, Defendants filed the instant Motion for Summary Judgment [Doc. No. 19].  On May 29, 2020, Dugas filed a memorandum in opposition [Doc. No. 29], as well as the Motion to Strike that has now been ruled upon by the Court as set forth above.  On June 5, 2020, Defendants filed a reply memorandum [Doc. No. 33] in support of their Motion for Summary Judgment.

Having resolved the evidentiary issues contained in Dugas's Motion to Strike, the Court now turns to ruling on Defendants' Motion for Summary Judgment.

### B.  Law and Analysis

#### 1.  Summary Judgment Standard

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party.  *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).  "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."  *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002).  Thereafter, if the non-movant is

unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).1

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).  While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air. Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).  To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added).  "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate."  *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co*., 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.,* 477 U.S. at 322-23.  This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id*. at 323.

### 2.  Negligence

This is a diversity  action,  and,  therefore,  Louisiana  substantive  law applies.  *See Erie R.R.  Co.  v.  Tompkins*, 304  U.S.  64,  78  (1938).  Article 2315 of the Louisiana Civil Code

establishes a general cause of action for negligence and provides: "[e]very act whatever of man

that causes damage to another obliges him by whose fault it happened to repair it."  "The duty-

risk analysis is the standard negligence analysis employed in determining whether to impose

liability." *Lemann v. Essen Lane Daiquiris*, 923 So.2d 627, 633 (La.2006).  The plaintiff must

prove the five elements:

> (1)   the defendant had a duty to conform his conduct to a specific standard (the duty element);
>
> (2)   the defendant's conduct failed to conform to the appropriate standard (the breach element);
>
> (3)   the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element);
>
> (4)   the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and
>
> (5)   the actual damages (the damages element).

*Id.* (citing *Fowler v. Roberts*, 556 So.2d 1, 4 (La.1989)).  "A negative answer to any of the

inquiries of the duty-risk analysis results in a determination of no liability."  *Mathieu v. Imperial*

*Toy Corp.*, 646 So.2d 318, 321 (La.1994).

In this case, the Court finds that Dugas has failed to raise a genuine issue of material fact

for trial that Defendants' negligence caused any personal injury to him.  No reasonable juror

viewing the Pilot surveillance video could find that Dugas was present in or near the car at the

time it was struck by the 18-wheeler.  Further, Dr. Baratta's expert report stands unrefuted that it

was physically impossible for a person to have run back to the car, have one foot in the car as the

car was sideswiped, get back out, and then be seen at the window of the 18-wheeler in 1.75

seconds.  This is not a case of dueling experts or credibility determinations appropriate for the

jury, but a case where the video speaks for itself, Defendants' expert further confirms what common sense would tell any juror.  Dugas's latest version of events does not refute that finding.

The Court is fully cognizant of its duty to consider the evidence in the light most favorable to the non-movant.  If Dugas and Strauss, the other driver, had conflicting tales of how the accident occurred or even whether Dugas was in or out of the vehicle, this might well be a case for the jury to decide.  However, Supreme Court and Fifth Circuit precedent require this Court to consider the video and determine whether, in light of that real time depiction of events, there is a genuine dispute of material facts.

In *Scott v. Harris*,  550 U.S. 372 (2007), the United States Supreme Court considered, among other issues, whether a court in reviewing a motion for summary  judgment is required to give more weight to the testimony of  the  non-moving  party than videotape evidence to the contrary.  In that case, a motorist brought a civil rights action under 42 U.S.C. § 1983 action against a county deputy and others, alleging a violation of his Fourth Amendment rights based on the deputy's alleged use of excessive force in bumping his car during a high-speed chase.   The district court denied the deputy's motion for summary judgment based upon qualified immunity. The deputy appealed, and the United States Court of Appeals for the Eleventh Circuit, affirmed, allowing the case to proceed to trial.

However, on petition for writ of certiorari, the Supreme Court reversed.  Even though the plaintiff claimed he was traveling at a normal rate of speed, the Supreme Court ruled that the district court could rely on the video tape which showed the plaintiff was driving dangerously and at high rates of speed.  While acknowledging that "facts must be viewed in the light most favorable to the nonmoving party," the Supreme Court cautioned that this standard applies "only

if there is a 'genuine' dispute as to those facts." *Id.* at 380 (citing FED. RULE CIV. P. 56(c)).  The

Supreme Court explained further:

> When opposing parties tell two different stories, one of which is blatantly
> contradicted by the record, so that no reasonable jury could believe it, a court
> should not adopt that version of the facts for purposes of ruling on a motion for
> summary judgment.
>
> That was the case here with regard to the factual issue whether respondent was
> driving in such fashion as to endanger human life. Respondent's version of events
> is so utterly discredited by the record that no reasonable jury could have believed
> him. The Court of Appeals should not have relied on such visible fiction; it should
> have viewed the facts in the light depicted by the videotape.

*Id.* at 380-81.

The Fifth Circuit has also applied *Scott*.  In *Carnaby v. City  of  Houston*, 636 F.3d 183

(5th Cir. 2011), the widow of a decedent who was shot and killed by law enforcement officers

brought a civil rights suit against the City of Houston and the two law enforcement officers

involved in the shooting, alleging violations of the Fourth Amendment.  The district judge

granted summary judgment to the City on the basis of qualified immunity, and the widow

appealed.  In affirming the district court, the Fifth Circuit relied on its review of a videotape

depicting the events that unfolded, explaining:

> Although we review evidence in the light most favorable to the nonmoving
> party, we assign greater weight, even at the summary judgment stage, to the
> facts evident from the video recordings taken at the scene. *Scott v. Harris*, 550
> U.S. 372, 127 S.Ct. 1769, 167 L.Ed. 686 (2007).  A court of appeals need not rely
> on the plaintiff's description of the facts where the record discredits that
> description but should instead consider "the facts in the light depicted by the
> videotape."

*Id.* at 187 (quoting *Scott*, 550 U.S. at 381).

Viewing the evidence in the light depicted by the videotape, it is clear that, contrary to his

first version of events, Dugas had exited his car prior to the accident.   He is wearing an orange

shirt and easily visible as he walks toward the eighteen-wheeler and the front of the store.  Dugas

is again seen through the window of the eighteen-wheeler, disappears from view for a very short time, and then reappears, walking in the same path towards the store.  Even without Defendants' expert, no reasonable juror could accept Dugas's deposition testimony that, in the time he could not be seen on the video, he turned around, ran to the car, got one leg in, was injured when the eighteen-wheeler sideswiped his car, stepped back out of the car, walked back to the eighteen-wheeler until he is again visible, walking in the same path and without any change in his demeanor, physical appearance, or gait.

Moreover, Defendants have provided unrebutted expert testimony that it was not physically feasible for the events to unfold as Dugas testified in his deposition.  Dr. Baratta, whose qualifications are not challenged, performed a reconstruction of the accident and determined that Dugas was not visible for 1.75 seconds, as brief a time as it appears from a lay person's review of the video.  He then provided detailed analysis, as set forth above and in his declaration and report, of exactly why it was not physically feasible for Dugas to have done anything during that time period other than to continue walking on the same path at the same approximate rate of speed as in seen in the video, both before and after the accident.

Under these circumstances, the Court finds that Dugas's self-serving deposition testimony and changing version of events does not create a genuine issue of material fact for trial.[5]  As he cannot prove that he was injured at all, he cannot establish multiple elements under the duty-risk analysis.

---

[5]Based on the Court's findings, it is not necessary to reach the medical evidence in this case.  The Court notes, however, that Dr. G. Gregory Gidman, who performed an independent medical examination of Dugas, testified that Dugas told him another version of events. [Doc. No. 26-4, Exhibit D, Declaration of Dr. Gidman, ¶ 9]. Dugas told Dr. Gidman, who had not reviewed the video prior to his examination, that an "18-wheeler side-swiped his car while he had one foot in the car and one foot on the ground," and "the *car door hit him in the back*, but he was not knocked to the ground."  *Id.* (emphasis in original).

Further, Dugas cannot rely on his medical experts to create a genuine issue of material fact for trial because their evaluation is based upon his version of events.  If no reasonable juror could accept his version (or versions) of events, then no reasonable juror could accept medical opinions based upon his version of events.  Defendants are entitled to summary judgment in their favor.

### 3.  Claims of Rachel Dugas

The Amended Petition in this case added Dugas's wife, Rachel Dugas, as a plaintiff. During Dugas's deposition in November 2018, his counsel indicated that they were dismissing Rachel Dugas's claim for loss of consortium.  Additionally, in paragraph 2 of the Notice of Removal, Defendants state that Plaintiff Rachel Dugas had stated her intention to dismiss her claim and that Strauss had never been served with the Amended Petition.  [Doc. No. 1-5, Notice of Removal].  However, Defendants Ace and CRST admittedly filed an Answer to the Amended Petition, and Rachel Dugas was listed as a party in the Notice of Removal.  [Doc. No. 1-5, ¶¶ 5, 7].  The Court finds no filing in this record indicating that Rachel Dugas's claim has been formally dismissed.  Thus, on the record before it, the Court must assume that Rachel Dugas's claim remains pending, regardless of her intentions, at least as against Defendants Ace (which the Court has also had to assume is still a Defendant, given the actions of the parties) and CRST.

To the extent that Rachel Dugas's sole claim for loss of consortium remains pending, it is derivative of Dugas's claims.  Under Louisiana law, where the court determines that the primary tort victim is not entitled to recovery, then a loss of consortium claim that derives from the principal claim likewise fails.  *See Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1031 n.22 (La.

2000) (citation omitted).  Therefore, Rachel Dugas's loss of consortium claim, if any, is also DISMISSED WITH PREJUDICE.[6]

## III.  CONCLUSION

For the foregoing reasons,  Dugas's Motion to Strike [Doc. No. 28] is GRANTED IN PART and DENIED IN PART.  To the extent that Dugas moves the Court to strike and not to consider the police report, the motion is GRANTED.  The motion is otherwise DENIED.  Defendants' Motion for Summary Judgment [Doc. No. 19] is GRANTED, and Dugas's claims are DISMISSED WITH PREJUDICE.   Rachel Dugas's loss of consortium claim, if any, is also DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this the 23rd day of June, 2020.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE

---

[6]Normally, the Court would not dismiss a claim, *sua sponte*, without giving a party notice and time to respond.  In these circumstances, however, it may be that Rachel Dugas's claim has already been voluntarily dismissed, and the parties failed to file the state court documents.  If the claim has not already been dismissed, it is clear as a matter of law that Rachel Dugas cannot proceed with a derivative claim, and, thus, in the interest of judicial economy, the Court will dismiss any remaining loss of consortium claim at this time.